Filed 7/23/15  P. v. Henson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SCOTTY EDWARD HENSON,<br><br>  Defendant and Appellant. | F067419<br><br>(Super. Ct. No. F10905879)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Poochigian, J. and Peña, J.

Defendant Scotty Edward Henson was convicted by jury trial of home invasion robbery in concert (Pen. Code, § 213, subd. (a)(1)(A);[1] count 1), false imprisonment by violence (§ 236; count 2), first degree burglary of an occupied home (§§ 459, 460, subd. (a); count 3), and first degree burglary of another occupied home (§§ 459, 460, subd. (a); count 4). The jury found true various firearm allegations, and the trial court found true allegations of prior felony convictions and prior prison terms. The court sentenced him to 71 years to life in prison pursuant to the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). On appeal, defendant contends the trial court erred in denying (1) his motion to suppress evidence and (2) his motion to dismiss his prior strike convictions. We disagree with these contentions and we affirm.

## FACTS

Defendant and two other armed men broke into and entered a home in rural Kerman in the afternoon. A mother and her two young children were at home. The men forced the mother at gunpoint to remain in the bedroom with her children while the men ransacked the house for valuables. Defendant pointed a shotgun at the mother. Less than a week later, defendant participated in the burglary of another house in Fresno.

## DISCUSSION

### I.      Motion to Suppress

Defendant contends the trial court should have granted his motion to suppress evidence of statements he made during a second interview because he was not readvised of his *Miranda*[2] rights.

#### A.      Facts

Defendant moved to suppress evidence of statements he made during two interviews. He argued that at the first interview, he did not respond to two of the

---

[1]      All statutory references are to the Penal Code unless otherwise noted.

[2]      *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

detective's questions regarding his *Miranda* rights and, thus, he did not understand his rights. And at the second interview, he should have been readvised of his rights because the interview was 43 hours after the first interview, and the readvisement that was given was inadequate. He explained that his misunderstanding of his *Miranda* rights was shown by his mention at the second interview of only his right to remain silent. Finally, he argued that he lacked education and his confession was coerced because he was emotionally and psychologically affected by the detectives' reference to his child and pregnant wife.[3]

At the hearing on the motion, the following evidence was presented:

After defendant was arrested, he was taken to the sheriff's department headquarters. Detective Hawkins and Detective Asselin brought defendant into an interview room to talk to him about the home invasion robbery and several burglaries. Defendant's wife, who was not under arrest, and their baby were in another room with a female detective. Before the interview, Hawkins read defendant his *Miranda* rights from a card. After Hawkins read each right, he asked defendant if he understood. Each time, defendant looked at him and said, "yes." Some of his responses were not audible on the video recording, but Hawkins testified that defendant did answer. The interview lasted about one hour and 30 minutes.

After the interview, defendant was booked into the county jail. Two days later, he was brought from jail back to the same location for a second interview by Hawkins, who was joined this time by Sergeant Reynolds. The interview began as follows:

> "[Hawkins]: So, you remember your rights and stuff from when I read them to you Thursday evening. Do you want me to read them to you again, or?

---

[3] At the hearing, defendant argued that hearing his child crying in the next room created a coercive environment.

"[Defendant]: I could probably read it back to you pretty much verbatim. Right to remain silent, at any given time I can say I'm done talking to you.

"[Hawkins]: Okay, you're correct. All right um, basically why we're in here today because my Sargent [*sic*] and I had been talking. Um, we tried to give you a little bit of an opportunity to and just—just hear me out, okay, to tell your side of the story on everything because you know—'cause you—you been through this before Scott, you're not—you—going through the court system and dealing with the judge and the court system.

"[Defendant]: Yeah (unintelligible)."

Hawkins testified that defendant had been arrested and through the criminal justice system before. He had been on parole, had suffered two prior strike convictions in 1998, and had been convicted of other crimes in 2003 and 2007. Only three months before he was arrested in this case, he was advised of his *Miranda* rights by a police officer who spoke to him in the hospital. Defendant stated that he understood the rights, and then said, "'I want to talk to a lawyer.'" The interview was terminated and the officer asked no further questions.

After hearing the evidence and reviewing the recorded interviews, the trial court, expressly finding Hawkins's testimony credible, found that defendant had indeed responded affirmatively in the first interview to all of Hawkins's questions. The court found no evidence of any coercion. As for the second interview, the court concluded readvisement was not necessary "given the short delay" between the initial advisement and the second interview. The court noted it was "abundantly clear that at the outset of the second interview … that reference was made to the prior advisements and that at that point the defendant was willing and voluntarily willing to speak to the detectives in regards to the second interview."

On appeal, defendant challenges the trial court's denial of his suppression motion only as to the statements he made at the second interview. He contends he did not make a voluntary, knowing, and intelligent waiver of his *Miranda* rights before making

statements to Hawkins at the second interview because he was not readvised of his rights. He points out it had been two days since the previous advisements; a different second officer was present with Hawkins; the previous advisements were insufficient because defendant was upset and crying and not likely to understand them; and his lack of understanding was shown by his mention of only his right to remain silent, and not his right to an attorney, when he was asked if he remembered the previous advisements.

### B. Analysis

The prosecution bears the burden of demonstrating the validity of a defendant's waiver of his *Miranda* rights by a preponderance of the evidence. The question is whether the alleged waiver was voluntary, knowing, and intelligent under the totality of the circumstances surrounding the interrogation. (*People v. Williams* (2010) 49 Cal.4th 405, 425.) "In considering a claim that a statement or confession is inadmissible because it was obtained in violation of a defendant's rights under *Miranda* …, *supra*, 384 U.S. 436, the scope of our review is well established. 'We must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained.'" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1032-1033.)

In *Miranda, supra,* 384 U.S. 436, the United States Supreme Court held that prior to any custodial interrogation, police officers must advise a criminal suspect of his right to remain silent, to have an attorney present, and to have an appointed attorney if the suspect is indigent, and he must be warned that any statement he does make may be used against him. (*Id.* at p. 444.) A defendant's statements obtained in noncompliance with this rule cannot be introduced into evidence to establish his guilt. (*Ibid.*) However, "[t]he defendant may waive effectuation of [his *Miranda*] rights, provided the waiver is made voluntarily, knowingly and intelligently." (*Ibid.*)

5.

"'After a valid *Miranda* waiver, readvisement prior to continued custodial interrogation is unnecessary "so long as a proper warning has been given, and 'the subsequent interrogation is "reasonably contemporaneous" with the prior knowing and intelligent waiver.' [Citations.]" [Citation.] The necessity for readvisement depends upon various circumstances, including the amount of time that has elapsed since the first waiver, changes in the identity of the interrogating officer and the location of the interrogation, any reminder of the prior advisement, the defendant's experience with the criminal justice system, and "[other] indicia that the defendant subjectively underst[ood] and waive[d] his rights."' [Citation.] [The Supreme Court has] permitted as 'reasonably contemporaneous' the resumption of interrogation without a readvisement even a day or two after the initial waiver." (*People v. Duff* (2014) 58 Cal.4th 527, 555; see *People v. Williams, supra,* 49 Cal.4th at p. 435 [no readvisement required after 40 hours and where the defendant had experience with the criminal justice system].)

For example, in *People v. Mickle* (1991) 54 Cal.3d 140 at page 171, the court determined readvisement was unnecessary before a hospital interview occurring 36 hours after the defendant had twice received and twice waived his *Miranda* rights. The court explained: "It was clear from the circumstances that defendant was still in official custody. He was familiar with the criminal justice system and could reasonably be expected to know that any statements made at this time might be used against him in the investigation and any subsequent trial. Indeed, the hospital interview was conducted by the same two officers who had interrogated defendant and placed him under arrest at the police station. By asking whether he 'remembered' them and the prior 'conversation,' the officers implied that they were simply tying up loose ends from the earlier [interrogation]. Nothing in the record indicates that defendant was mentally impaired or otherwise incapable of remembering the prior advisement and deciding to answer a few more questions. Under these facts, no *Miranda* violation occurred." (*People v. Mickle, supra,* at p. 171.)

Here, considering the totality of the circumstances, we agree with the trial court's conclusion that readvisement at the second interview was not required. The two-day delay, in itself, did not necessitate readvisement. Hawkins was present at both interviews, even though the other officer changed. Defendant remained in custody and was interviewed at the same location. Nothing about the second interview would have suggested to him that the officers were no longer seeking to obtain incriminating evidence from him. Furthermore, the evidence supported the conclusion that defendant did understand his rights. Although his wife and child were nearby during the first interview, nothing suggested that their presence rendered defendant so emotional that he was unable to understand his rights. In fact, he had a criminal record and was familiar with the justice system. Only three months earlier, he had been advised of his rights. And when Hawkins asked him at the second interview if he would like to hear his rights again, defendant nonchalantly said he could probably recite them "pretty much verbatim," suggesting he had heard his rights often enough to know them and did not want or need to hear them again. Under all the circumstances, we conclude the trial court correctly concluded defendant's ongoing waiver of his *Miranda* rights was voluntary, knowing, and intelligent. The court did not err in denying the motion to suppress.

## II.    *Romero*[4] **Motion**

Defendant also contends the trial court erred when it refused to dismiss one or both of his prior strike convictions pursuant to section 1385 and *Romero, supra,* 13 Cal.4th 497.

Section 1385 grants trial courts the discretion to dismiss prior strike convictions if the dismissal is in furtherance of justice. (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529-530.) "'A court's discretion to strike [or vacate] prior felony conviction

---

[4]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530 (*Romero*).

allegations [or findings] in furtherance of justice is limited.  Its exercise must proceed in strict compliance with [Penal Code] section 1385[, subdivision ](a).'" (*People v. Williams* (1998) 17 Cal.4th 148, 158, last brackets added].)  The Three Strikes law "was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero, supra,* at p. 528; *People v. Garcia* (1999) 20 Cal.4th 490, 501 ["a primary purpose of the Three Strikes law was to restrict judicial discretion"].)  The Three Strikes law establishes "'a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike'" *unless* the sentencing court finds a reason for making an exception to this rule.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  There are "stringent standards that sentencing courts must follow in order to find such an exception."  (*Ibid.*)  In order to dismiss a prior strike conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams, supra,* 17 Cal.4th at p. 161.)

A trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard.  (*People v. Carmony, supra,* 33 Cal.4th at p. 374.)  An abuse of discretion is established by demonstrating that the trial court's decision is "irrational or arbitrary.  It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the court's decision will not be disturbed on appeal.  (*Ibid.*)

In this case, defendant moved to dismiss his two prior strike convictions for first degree burglary and assault upon an officer with a deadly weapon.  He argued that he was

raised by drug abusers and left home at age 12, receiving no education past the sixth grade; he had been abusing drugs his whole life and was addicted to methamphetamine; both of his prior strike convictions arose from a single incident that occurred when he was 17 years old and on a methamphetamine binge; and the facts of his prior strike convictions were less egregious than the typical residential burglary because he burgled open garages, not actual living spaces.

In denying the motion, the trial court stated:

"The defendant's criminal history truly spans two decades and is substantial. And additionally, the current crimes, as well as some of the prior crimes, involve acts of violence or serious danger to the public. [¶] … [¶] All right. So the Court has considered the factors in aggravation, specifically that the crimes involve great violence, the threat of great bodily harm. The manner in which the crimes were carried out indicate to the Court planning and sophistication. Additionally, the defendant's prior convictions as an adult are of increasing seriousness. Defendant was on parole when the crime was committed and his prior performance on probation or parole was unsatisfactory. [¶] The Court finds no factors in mitigation relating to the crime or to the defendant."

Defendant's probation report shows that his juvenile history, which began at 13 years of age, included vehicle theft and evading an officer. His first adult convictions were the two strike convictions in 1998 for assault with a deadly weapon (a vehicle) upon an officer and first degree burglary. In 2002, he violated parole and was returned to prison. In 2003, he was convicted of stealing a vehicle and evading an officer, both felonies he committed a few months after his release from prison. He was returned to prison. In 2005, he violated parole a few months after his release from prison and was returned to prison. In 2006, he was convicted of misdemeanor possession of marijuana. In 2008, he violated parole and was returned to prison. In 2009, he was convicted of misdemeanor assault.

In the current case, defendant entered a house when its inhabitants were present. He and two other men all pointed their weapons at the mother who was trying to protect her young children. Defendant was armed with a shotgun.

We conclude defendant has failed to establish that the trial court's denial of the motion to dismiss his prior strike convictions was outside the bounds of reason under the facts and the law. We will not find an abuse of discretion unless the decision was so irrational or arbitrary that no reasonable person could agree with it. And here it clearly was not. The trial court considered relevant factors and acted to achieve legitimate sentencing objectives, and we agree with the court's conclusion that defendant falls well within the spirit of the Three Strikes law. As the probation report notes, defendant's prior convictions were numerous and his prior performance on parole was unsatisfactory. When he was out of custody, he engaged in criminal conduct and was returned to custody. Many of his crimes involved violence or the threat of violence, and his violence was escalating. His current crimes involved the invasion of an inhabited home where he and his armed cohorts held a mother and her two young children at gunpoint. We see no abuse of discretion in the trial court's denial of defendant's *Romero* motion.

## DISPOSITION

The judgment is affirmed.